## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD LOUIE** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 25-1179** |
| | : | |
| **SPROUTS FARMERS MARKET, INC.,** | : | |
| **BOARS HEAD PROVISIONS, CO.,** | : | |
| **INC.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                          **March 27, 2025**

A person who bought a turkey sandwich at his local market became severely ill after eating the sandwich. He now sues the market and the manufacturer of the meats. He attempts to state a claim under a Pennsylvania statute which does not provide a private right of action and seeks punitive damages without specific allegations allowing us to plausibly infer a basis for punitive damages for negligence or strict liability. We grant the meat producer's Motion to strike the punitive damages without prejudice and dismiss the claim under the Pennsylvania statute for lack of standing.

**I.     Alleged facts**

Donald Louie purchased a "Ready-to-Eat Boar's Head Turkey Sandwich on Wheat Bread" at a Sprout's Farmers Market on July 16, 2024.[1] The packaging did not warn of illness-causing substances.[2]

Mr. Louie ate the turkey sandwich.[3] He soon suffered severe injuries and infections including diarrhea, fatigue, vomiting, constipation, nausea, a perirectal abscess, cramps, weight loss, anal fistula, and dehydration.[4] His condition worsened. He sought emergency medical care.[5] Boar's Head recalled unspecified products nine days after Mr. Louie ate the sandwich.[6]

Mr. Louie suffered severe pain and trauma, scarring, mental anguish, and humiliation.[7] He incurred medical expenses resulting in additional losses of current and future earnings and impairment of earning capacity and power.[8] Mr. Louie claims a reduction in his ability to enjoy life and its pleasures.[9]

Mr. Louie sued Sprout's and Boar's Head for negligence, strict liability, breach of warranty, and violating Pennsylvania's Adulteration of Food Statute.[10] Mr. Louie seeks compensatory and punitive damages.[11]

**II.      Analysis**

Boar's Head now moves to (1) strike the demand for punitive damages for negligence, strict liability, and violating a Pennsylvania food safety law; and (2) dismiss Mr. Louie's claim under Pennsylvania's Adulteration of Food Statute. Mr. Louie responds arguing he pleaded sufficient conduct as a basis for punitive damages and has alleged a claim for negligence *per se* under Pennsylvania's Adulteration of Food Statute.[12]

We grant Boar's Head's Motion to strike.[13] Mr. Louie cannot seek punitive damages for his strict liability and statutory claim and has not pleaded a fact basis for punitive damages for negligence. We also grant Boar's Head's Motion to dismiss. We dismiss with prejudice Mr. Louie's claim under Pennsylvania's Adulteration of Food Statute because the Pennsylvania General Assembly does not provide a private right of action under the statute.[14]

> **A.      We dismiss Mr. Louie's claim under Pennsylvania's Adulteration of Food Statute because it does not provide a private right of action and Mr. Louie has not pleaded a claim for negligence *per se*.**

Mr. Louie alleged Sprout's and Boar's Head violated Pennsylvania's Adulteration of Food Statute.[15] The parties now agree Pennsylvania's Adulteration of Food Statute does not contain a private right of action.[16] Boar's Head liberally reads Mr. Louie's Complaint as asserting a claim

for negligence *per se* under the Statute and argues the negligence *per se* claim should be dismissed.[17] Mr. Louie, following Boar's Head's lead, now argues he alleged a claim for negligence *per se*. But this language is nowhere to be found in his Complaint. Mr. Louie is represented by competent counsel: we will not infer unpleaded claims.[18]

We dismiss with prejudice Mr. Louie's claim under Pennsylvania's Adulteration of Food Statute because, as the parties have acknowledged, the Pennsylvania General Assembly does not provide for a private right of action. "Because there is no express or implied private right of action under th[is] statute[], Plaintiff lacks standing to pursue th[is] claim[]."[19] Mr. Louie can, however, use Pennsylvania's Adulteration of Food Statute as a predicate for a separate negligence *per se* claim if he amends his Complaint and we grant him leave to do so consistent with our forthcoming Scheduling Order.

### B. We strike Mr. Louie's demands for punitive damages.[20]

Boar's Head argues Mr. Louie's claims are insufficient to warrant punitive damages because Mr. Louie does not plead facts demonstrating Boar's Head's actions were "egregious, outrageous, inspired by an evil motive, or caused by reckless indifference to the rights of others."[21] We agree. Mr. Louie has not pleaded facts warranting punitive damages for negligence with respect to Count I, II, or IV.

#### 1. We strike punitive damages for negligence.

Mr. Louie contends Sprout's and Boar's Head negligently manufactured and sold food products that made him ill, failed to label packaging with potentially harmful ingredients, breached their duty to provide accurate product information, misled him about the product's contents, failed to inspect the product, and sold food unfit for human consumption.[22] Boar's Head argues these allegations do not rise to the level necessary to warrant punitive damages.[23]

3

Punitive damages "may be awarded for conduct that is outrageous, because of the defendant's evil motive or [its] reckless indifference to the rights of others" under Pennsylvania law.[24] Punitive damages are not awarded for ordinary negligence.[25] The defendant must have acted in an intentional, reckless or malicious manner, and courts must focus on the state of mind.[26] A defendant acts recklessly when it subjectively know about—or should know about—a risk of harm and chooses to disregard it anyway.[27] "As a general rule, [judges] have deemed . . . motions to dismiss punitive damages claims to be premature and inappropriate where . . . the complaint alleges reckless conduct."[28]

But Mr. Louie does not allege facts allowing us to plausibly infer Boar's Head engaged in willful misconduct or acted with recklessness. He nakedly asserts Sprout's and Boar's Head "improperly, deceptively, and misleadingly marketed food to reasonable customers" and their marketing omitted information about potentially harmful substances.[29] But Mr. Louie does not plead facts showing Boar's Head acted with an evil motive, reckless indifference, indicia of malice, or conscious and wanton disregard of a known risk. He instead couches his allegations in terms of "carelessness," which does not meet the standard for punitive damages.[30]

We cannot infer Sprout's and Boar's Head acted with intent and knowledge to achieve a wrongful purpose. Mr. Louie instead pleads ordinary negligence. We strike Mr. Louie's demand for punitive damages in his negligence claim without prejudice to be renewed based on facts adduced in discovery.

### 2. We strike punitive damages for strict liability.

Mr. Louie contends Sprout's and Boar's Head are strictly liable for his injuries.[31] He alleges these entities regularly distributed and sold a sandwich unfit for human consumption, posing an unreasonable danger to the public.[32] He argues the sandwich, intended for consumption without

4

inspection, caused him physical harm.[33] Boar's Head argues these allegations do not rise to the level of egregious or outrageous conduct driven by evil motive or reckless indifference necessary to warrant punitive damages.[34] We agree and strike Mr. Louie's demand for punitive damages for strict liability.

Pennsylvania law permits a plaintiff to assert a claim for punitive damages in connection with strict liability actions.[35] Our Court of Appeals directs the standard for punitive damages under strict liability requires outrageous conduct that is intentional, willful, wanton, or reckless—not merely the presence of a defective product.[36]

Mr. Louie does not plead facts supporting punitive damages relating to his strict liability claim. He conclusory contends the "food . . . was unreasonably dangerous to [him] when it was furnished by Defendants" and Sprout's and Boar's Head "knew that the 'Ready-to-Eat Boar's Head Turkey Sandwich on Wheat Bread' was to be consumed without inspection[.]"[37] But Pennsylvania law requires facts from which we could plausibly infer clear and convincing evidence of intentional, willful, wanton, or reckless conduct. Mr. Louie does not allege facts suggesting Sprout's and Boar's Head knew or should have known the sandwiches were dangerous. Alleging awareness of a product's potential risks is not enough. Mr. Louie does not plead facts permitting an inference of evil motive, conscious disregard, or reckless indifference. We strike Mr. Louie's demand for punitive damages in his strict liability claim without prejudice to be renewed if warranted based on facts adduced in discovery.

### 3. We strike Mr. Louie's demand for punitive damages related to his claim under Pennsylvania's Adulteration of Food Statute with prejudice.

The General Assembly does not authorize a private right of action, let alone punitive damages, in the Pennsylvania Adulteration of Food Statute or the broader Pennsylvania Food Safety Act.[38] We strike Mr. Louie's demand in his claim under Pennsylvania's Adulteration of Food

Statute with prejudice because the General Assembly has not provided a basis for a punitive damages claim.

### III.     Conclusion.

Donald Louie claims a grocery store and food manufacturer's turkey sandwich caused his severe food poisoning. He seeks compensatory and punitive damages. But he pleads negligence and strict liability. Neither theory supports punitive damages without recklessness or willful misconduct. He also invokes a statute providing no private right of action. He cannot recover punitive damages on these pleadings. We strike his punitive damages demands without prejudice and dismiss his statutory claim with prejudice.

---

[1] ECF 1 at 14 ¶ 6.

[2] *Id.* at 15 ¶ 13.

[3] *Id.* ¶ 14.

[4] *Id.*

[5] *Id.* ¶ 15.

[6] *Id.* ¶ 12.

[7] *Id.* ¶ 17.

[8] *Id.* ¶ 16.

[9] *Id.* at 16 ¶ 18.

[10] *Id.* ¶¶ 19–35.

[11] *See, e.g., id.* at 20 ¶ 36.

[12] ECF 19. Boar's Head replies in further support of its Motion. ECF 21.

[13] Sprout's Farmers Market did not join Boar's Head's Motion to strike. ECF 6. But we can strike immaterial matters from a pleading *sua sponte*. Fed. R. Civ. P. 12(f)(1). Because Mr. Louie makes the same blanket, vague allegations against both defendants we find application of the law to the facts alleged in the Complaint produces the same result for both Defendants. As such, we strike Mr. Louie's claims for punitive damages against all defendants without prejudice.

---

[14] ECF 17. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility . . . a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that . . . 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' . . . , we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[15] ECF 1 at 19–20 ¶¶ 31–36.

[16] ECF 17 at 10; ECF 19 at 9. Although the parties agree there is no private right of action, we briefly consider whether there is an implied right of action and find there is none.

The Pennsylvania Supreme Court directs us to apply the test in *Cort v. Ash* to determine an implied private right of action. *See Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1189 (Pa. 2007) (citing *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999)) (adopting *Cort* framework to analyze whether statute creates private right of action). The Pennsylvania Supreme Court mandates we investigate whether "(1) the plaintiff is part of a class for whose 'especial' benefit the statute was enacted; (2) there is an indication of legislative intent to create or deny a remedy; and (3) an implied cause of action is consistent with the underlying purpose of the legislative scheme." *MERSCORP, Inc. v. Del. Cnty.*, 207 A.3d 855, 870 n.14 (Pa. 2019) (citing *Est. of Witthoeft*, 733 A.2d at 626, *quoting Cort*, 422 U.S. at 78).

7

      i.    The first *Cort* factor—conferral of a special benefit on a particular class—is not met.

The first *Cort* factor—whether the General Assembly conferred a special benefit on a particular class—is not met. The General Assembly must "unmistakably focus" a statute's text on benefiting a "particular class . . . whose welfare [it] intended to further." *California v. Sierra Club*, 451 U.S. 287, 294 (1981). A statute functioning as a "general regulatory scheme" for the "benefit [of] the public at large" does not reflect an intent to confer a special benefit on a particular class. *Id.* at 297–98.

The General Assembly, in the Pennsylvania Food Safety Act, establishes a regulatory framework for food safety in the Commonwealth. *See* 3 PA. CONS. STAT. §§ 5721-5737. The General Assembly's statutory text does not indicate an intent to benefit a specific, identifiable class. The General Assembly uses the Pennsylvania Food Safety Act to serve as a public welfare regulation, not as a vehicle for private enforcement. It does not confer a special benefit on consumers of food products. This structure strongly suggests no implied private right of action and the first *Cort* factor is not met.

      ii.    The second *Cort* factor—legislative intent to provide a remedy—is not met.

The second *Cort* factor examines the legislative intent to provide a remedy. *Cort*, 422 U.S. 78. Pennsylvania law identifies several factors to consider in ascertaining intent: (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such statute. 1 PA. CONS. STAT. § 1921(c). We presume "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and "the entire statute to be effective and certain." *Id.* § 1922(1)-(2).

The General Assembly's objectives or desired remedies do not imply a private right of action. The General Assembly enacted the Pennsylvania Food Safety Act to protect public health through regulation, require licensing, certify organic food and related entities, impose penalties, and repeal outdated provisions. Pa. Sen. J., 2010 Reg. Sess. No 53 (Oct. 12, 2010). The language similarly does not imply a private right of action. The General Assembly establishes an explicit enforcement framework, limiting civil penalties to $10,000 and vesting enforcement authority in the Pennsylvania Department of Agriculture, the Secretary of Agriculture, and other government agencies. The Act's structure confirms the General Assembly delegated enforcement authority to the Secretary of Agriculture. And judicial interpretations of the Pennsylvania Food Safety Act do not suggest the General Assembly's intent to create an implied private right of action. *See, e.g.*, *Grande v. Starbucks Corporation*, No. 18-04036, 2020 WL 687669, at *3 (E.D. Pa. Feb. 11, 2020) (noting the absence of clear authority supporting a private right of action under the Statute).

The second *Cort* factor is not met: we agree with our colleagues there is no indication the General Assembly intended the Pennsylvania Food Safety Act to provide a private remedy.

   iii. The third *Cort* factor—advancing principal purposes of the Pennsylvania Food Safety Act—is not met.

The third *Cort* factor examines whether implying a private cause of action would further "the underlying purpose of the legislative scheme." *See Cort*, 422 U.S. at 84 (examining whether the requested remedy would advance "the primary congressional goal"). The General Assembly advanced five purposes of the Pennsylvania Food Safety Act: (1) to protect public health through regulation; (2) to require licensing; (3) to certify organic food and related entities; (4) to impose penalties; and (5) to repeal outdated provisions. Pa. Sen. J., 2010 Reg. Sess. No 53 (Oct. 12, 2010). Creating a private enforcement mechanism for Mr. Louie under the Pennsylvania Food Safety Act would disrupt the General Assembly's intended enforcement structure and interfere with regulatory oversight. The General Assembly vests enforcement authority in Commonwealth agencies, primarily the Department of Agriculture, in the Pennsylvania Food Safety Act. The General Assembly authorizes administrative actions, inspections, penalties, and licensing requirements but does not create a private right of action. The third *Cort* factor provides no basis for inferring a private remedy under the Pennsylvania Food Safety Act.

The General Assembly does not grant individuals a personal right to enforce food safety standards or provide a private remedy to sue under the Pennsylvania Food Safety Act. It instead delegates authority to the Department of Agriculture.

---

[17] ECF 17 at 9–10.

[18] *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 460 F. Supp. 2d 659, 665 n.6 (D.N.J. 2006) (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986)) ("[T]he court is not obligated to research and construct [a party's] legal arguments, especially since it is represented by counsel").

[19] *United States Att'y Gen. v. PNC Bank*, No. 07-417, 2008 WL 11515398, at *2 (E.D. Pa. Feb. 12, 2008).

[20] The Supreme Court, through Federal Rule of Civil Procedure 12(f) provides we, on our own or on a motion, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Resources Corp.*, No. 07-4686, 2008 WL 2758238, *14 (E.D. Pa. July 9, 2008) (quoting *Mclnerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa. Dec. 31, 2002)).

[21] ECF 17 at 8.

[22] ECF 1 at 16–17 ¶ 20.

[23] ECF 17 at 8–9.

[24] *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770–71 (Pa. 2005) (quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)); *Antonelli v. Youth Educ. in the Arts!*, No. 19-3927, 2020 WL 1042424, at *7 (E.D. Pa. Mar. 3, 2020) (citing *Hutchison*, 870 A.2d at 770) (cleaned up) ("Punitive damages are appropriate for torts sounding in negligence when the conduct goes beyond

---

mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured.").

[25] *Villagran v. Freightbull, Inc.*, 698 F. Supp.3d 807, 812 (E.D. Pa. Oct. 12, 2023).

[26] *Hutchison*, 870 A.2d at 770.

[27] *Id.* at 772.

[28] *Harvell v. Brumberger*, No. 19-2124, 2020 WL 6947693 at *8 (M.D. Pa. Nov. 4, 2020), *report and recommendation adopted*, 2020 WL 6946575, (M.D. Pa. Nov. 25, 2020).

[29] ECF 1 at 14 ¶ 7, 16–17 ¶ 20.

[30] *Id.* at 15 ¶ 14.

[31] *Id.* at 17 ¶¶ 24–27.

[32] ECF 1 at 17 ¶ 25.

[33] *Id.*

[34] ECF 17 at 8.

[35] *Kovalev v. Lidl US, LLC*, 647 F. Supp.3d 319, 354 (E.D. Pa. Dec. 21, 2022) (quoting *Thorpe v. Bollinger Sports, LLC*, No. 14-04520, 2015 WL 3400919, at *2 (E.D. Pa. May 27, 2015)) ("[I]n products liability cases grounded in a theory of strict liability, it appears that a plaintiff may seek punitive as well as compensatory damages, although [the Pennsylvania] Supreme Court has not definitively so held").

[36] *Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828, 833–34 (3d Cir. 1983) (rejecting notion that punitive damages are theoretically inconsistent with strict products liability). A plaintiff seeking punitive damages for a strict liability offense must prove the requisite conduct by clear and convincing proof. *Acosta*, 717 F.2d at 839–40.

[37] ECF 1 at 17 ¶ 25.

[38] 3 PA. CONS. STAT. § 5728. The General Assembly instead permits only civil fines of up to $10,000 at the Secretary of Agriculture's discretion under the Pennsylvania Food Safety Act. *See* 3 PA. CONS. STAT. § 5728(b) (defining when food products are deemed adulterated); *see also discussion in* Part II.A, *supra*.